[No. 10883.   Department One.   April 9, 1913.]

ANDREW JOHNSON, *Respondent*, v. S. A. MANN, *Appellant*.[1]

ATTORNEY AND CLIENT—CONTRACT FOR COMPENSATION—FRAUD OF ATTORNEY—EVIDENCE—ISSUES AND INSTRUCTIONS.  In an action to recover money paid to an attorney as a fee for defending plaintiff, on the ground of misrepresentations as to the seriousness of the charge, it is error to try the case on the theory that the plaintiff could recover all or no part of the money paid, where it appears that the attorney was not discharged, but performed various services, securing the plaintiff's release on bail, argued a demurrer, investigated the facts, secured a separate trial, and sat through the trial of the other defendants, whereupon plaintiff was discharged; since the issues to be presented are, was the plaintiff overreached; and if so, what was the reasonable value of the services performed.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered December 14, 1911, upon the verdict of a jury rendered in favor of the plaintiff, in an action for money paid.   Reversed.

*Lucius G. Nash*, for appellant.

*Crandell & Crandell*, for respondent.

GOSE, J.—On the 6th day of March, 1911, the plaintiff was arrested upon two criminal charges, and lodged in the city jail in the city of Spokane, where he remained in confinement until the 15th day of March following.   In one of the complaints, the plaintiff and two other persons were charged jointly with having conspired together to kill one N. S. Pratt.   In the other complaint, the plaintiff and the same persons were jointly charged with having threatened to kill the said Pratt.   Several days after the plaintiff had been arrested, the defendant, an attorney at law, called upon him in the city jail, whether at the request of the plaintiff or at his own instance being a disputed question, the plaintiff as-

[1]Reported in 131 Pac. 213.

serting the latter and the defendant the former. At this interview, the plaintiff gave the defendant the following order:

"Spokane City Jail, March 15, 1911.
"Chief of Police: Kindly deliver to bearer, Mr. S. A. Mann, the sum of Two Hundred & Fifty dollars ($250.00) money held by your office to my credit, as part atty. fees. Andrew Johnson, Prisoner.
O. K. W. J. Doust, Chief of Police. O. K. by W. D. Nelson."

The city authorities then held $763 of the plaintiff's money, out of which fund the order was honored. The defendant then commenced to act as attorney for the plaintiff, and as such got him admitted to bail, $500 cash being furnished therefor by the plaintiff. The plaintiff is sixty-three years of age, can read and write, was born in Sweden, came to this country when he was twenty-one years of age, lived eleven years in St. Paul, had lived four years in Spokane, has been a citizen of this country for a quarter of a century, and is a common laborer by occupation. He brought this action, alleging his arrest and confinement in the city jail; that he had never before been incarcerated; that his arrest and confinement caused him great fear and apprehension; that, on the 15th day of March, while confined in jail and in a troubled state of mind, the defendant came to him and represented that he, the plaintiff, was charged with a very serious offense "of which he was liable to be convicted and for which he was liable to be sentenced to the penitentiary for a long term;" that he, the defendant, could "secure plaintiff's release and discharge" from prison, but that "it would require a great deal of work and money expended," to the amount of $250; that in fact there was no evidence against the plaintiff and no work was required to secure his release and discharge; that these representations were false and untrue; and that, "believing and relying on said representations of defendant herein set forth in this complaint, this plaintiff signed an order whereby defendant was enabled to and did draw and receive $250 of defendant's money, and that thereby, and as a

result of defendant's herein alleged and aforesaid false and fraudulent representations to plaintiff, this plaintiff was injured and defrauded out of his property and money in the sum of $250." It is further alleged that the plaintiff was discharged without a trial; that the defendant rendered no service and expended no money; that, immediately after his release from jail, and on the 16th day of March, the plaintiff, having discovered the fraud, notified the defendant of the fact, informed him that he did not desire him to act as his attorney, and demanded a return of the $250, which the defendant refused. The prayer is for a judgment for $250 and interest from the date of the order. Issue was joined on the charges of solicitation and fraud. The case was tried to a jury, and resulted in a verdict for $250, which was made effective by a judgment entered for that amount, with interest from the 6th day of December, 1911. The defendant has appealed.

The errors assigned are, (1) error in denying the appellant's motion for a nonsuit, and (2) error in denying his motion at the close of the trial for a directed verdict. These assignments present a single question, namely, the sufficiency of the evidence to support the verdict. The charges of fraud, when condensed, are three in number; (1) that the respondent if convicted might be sentenced to a long term of imprisonment in the penitentiary; (2) that the appellant could clear him; and (3) that it would require "a great deal of work and money expended."

The respondent testified that the appellant told him in the jail that "he was liable to go to the penitentiary;" that it frightened him, and that the appellant said that he could not promise to clear him. When asked by his attorney whether he believed the statement that he might be sent to the penitentiary, he answered, "I don't know to believe or not." He further said that the appellant told him that the charge "was very serious." After he had been admitted to bail, he, with a committee of three persons appointed by a labor union of

which he was a member, called upon the appellant.  The evidence touching this visit is:

"Q. Tell the jury now what you said and what was said to Judge Mann up there.  A. Well, I asked him for the money; I want that money; I said if you give me $200 back I will let you have fifty dollars.  So he said, 'No, I won't give you a cent I won't give you a cent.'  Q. Did you say anything at that time about not wanting him to do anything for you?  A. No. Well, no I—he didn't do anything for me, never done any service, never done anything.  Mr. Crow: Well, of course, that is a conclusion, and I move that it be stricken.  Q. And did you tell him that you did not want him to work for you any more after that?  A. I can't recollect that.  Q. You can't recollect?  A. No."

A member of this committee testified:

"A. We told Judge Mann we considered a fee of two hundred and fifty dollars for defending Mr. Johnson was pretty high, considering Mr. Johnson's circumstances and the nature of the case.  So we had quite a long talk with the judge, all four of us, I believe, spoke with him, and the judge contended that—Mr. Crow: I object to the statement.  Mr. Crandell: Q. What did the judge say?  A. The judge said that the fee was normal.  If they had gone to other lawyers they would charge as much more.  So we told him then that we believed that we would discharge him from the case, and that he should take his fee, pay out of the fee and return the balance back.  Q. What did the judge say to that?  A. He said he had gone to a great deal of trouble and work in the case up to that time and his discharge from the case—he didn't think there would be any balance; he thought he had earned it all.  Q. Did he refuse to give back any of the money?  A. Yes, sir."

Another member of the committee testified that:

"A. We told Mr. Mann that we thought two hundred and fifty dollars was unreasonable for a case of that kind, and the nature it was, and that we could get other lawyers for a smaller sum.  And he said he thought it was very reasonable, and we asked him if they objected to his getting another lawyer.  He said he didn't.  We asked him if he would give us the money back and he said that he would not, and we

told him then that we would hire another attorney . . .
Q. I will make it a little more specific. What was the offense charged against Mr. Johnson? A. My understanding at that time that he was a witness for these other two men. Q. You thought two hundred fifty dollars was too much for getting a witness out of jail—is that it? A. Yes, sir. Q. Did you know at that time there was a charge of conspiracy against Mr. Johnson? A. I don't remember. Q. Did you know at that time that there was a charge of threatening to kill against Mr. Johnson, an entirely distinct and separate case? A. No, sir."

The statute, Rem. & Bal. Code, § 2267, provides that the penalty for a conviction for a gross misdemeanor, which includes a conspiracy to commit a crime (Rem. & Bal. Code, § 2382), shall be imprisonment in the county jail "for not more than one year or by a fine of not more than $1,000, or both." It may be remarked that the offense of conspiring to commit murder is a serious offense. The respondent's version is that the appellant represented that the penalty was imprisonment in the penitentiary. This the appellant denies. The record and other undisputed evidence shows that the respondent was admitted to bail upon the application of the appellant before the committee waited upon him; that later the appellant argued a demurrer to the complaint, investigated the facts so far as he could, obtained an order giving the respondent a separate trial, sat in the trial of the other defendants, and at its conclusion moved and obtained a discharge of the respondent.

We are not aware of any principle of law, and no authority has been called to our attention, which would permit the respondent to recover the entire amount paid to the appellant, allowing him nothing whatever for his services. The theory of the case was, and the court instructed, that the respondent must recover the $250 or nothing. The authorities cited by the respondent state the admitted rule that, where an attorney purchases property from his client and the latter seeks a rescission upon the ground of fraud, the conduct of

the attorney will be subjected to the closest scrutiny, and the burden will be upon him of proving that his conduct was open and honest, and that he advised his client as fully and disinterestedly as he would have done had the client been dealing with a third party. This rule is based upon the fiduciary relation which exists between an attorney and his client, which arises concurrently with the closing of the contract of employment. The rule and its limitations are stated in the note to *Shirk v. Neible*, 83 Am. St. 185, as follows:

"In matters other than those concerning fees, an attorney and client are not absolutely prohibited by law from contracting with each other, nor does the law declare all such contracts either void or voidable, but such a transaction is closely scrutinized by the courts, and often declared to be voidable, when it would be deemed unobjectionable between other parties."

The statute, Rem. & Bal. Code, § 137 *et seq.*, provides a method for a change of attorneys in cases pending in court. Under the statute, there can be no change of attorneys in a case pending until the charges of the attorney have been paid. The appellant, however, had his fee, and the respondent was at liberty to discharge him and employ other counsel if he chose to do so. The evidence does not show a discharge. Clearly the respondent may not recover the entire sum paid to the appellant. The appellant is entitled to the contract value of his services unless he intentionally misrepresented the penalty of the crimes or the magnitude of the services to be performed. If he did so misrepresent, he is entitled to the reasonable value of his services. The respondent may not have both the services and the money. If I pay a grocer one dollar for a package of flour weighing ten pounds upon his representation that it weighs twenty pounds, I cannot keep the flour and recover the one dollar. I may return the flour and have my dollar, or I may recover an amount representing the difference between the value of the package as it was and as it was represented to be.

The case was commenced and tried upon a fundamentally

wrong theory. The court correctly instructed that the burden of proof was upon the plaintiff. This is because a contract for the employment of an attorney for the rendition of professional services, unlike a contract between an attorney and client in matters of property, is not looked upon with disfavor, and the burden of proving the fraud was upon the respondent.

The judgment is reversed, with directions to permit the parties to recast their pleadings so as to present two questions: First—Was the respondent overreached, as we have defined that term, in making the contract? Second—If so, what was the reasonable value of the appellant's services?

CHADWICK, MOUNT, PARKER, and MAIN, JJ., concur.